**Ajmal Hussain Shah HASHMI,**
**Petitioner**

v.

**ATTORNEY GENERAL OF THE**
**UNITED STATES,**
**Respondent.**

No. 06–3934.

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 2008.

Opinion Filed: July 7, 2008.

Regis Fernandez, [Argued], Newark, NJ, for Petitioner Ajmal Hussain Shah Hashmi.

Christina B. Parascandola, [Argued], Richard M. Evans, Joan E. Smiley, Allen W. Hausman, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent, Michael B. Mukasey, United States Attorney General.

Before: FUENTES, JORDAN, Circuit Judges, and DITTER,* District Judge.

## OPINION

FUENTES, Circuit Judge.

Petitioner Ajmal Hussain Shah Hashmi's removal proceedings were adjourned on multiple occasions while he awaited adjudication of his pending I–130 application (a claim for residency based on his marriage to a United States citizen). After eighteen months had elapsed, the Immigration Judge ("IJ") denied a further continuance—despite the government's con-

---

* The Honorable J. William Ditter, Jr., United States District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

sent—because the case had been pending far longer than the eight-month period suggested by the "case-completion goals" set by the Department of Justice ("DOJ") for this type of case. In our view, the IJ's denial of a motion for a continuance based on case-completion goals rather than on the facts and circumstances of Hashmi's case was arbitrary and an abuse of discretion. Accordingly, we grant Hashmi's petition for review.

## I.

Hashmi is a native and citizen of Pakistan. He has testified that he was previously married in his home country and that the marriage ended in divorce. He entered the United States on October 22, 2000, on a six-month tourist visa, which he overstayed. The following year, Hashmi married a United States citizen, who filed an I–130 petition on his behalf. The government contends that the petition "shows no prior husband or wife"; however, Hashmi submitted the divorce decree for his prior marriage during the I–130 application process and insists that he never intended to conceal the prior marriage. (App.70.)

Hashmi was served on July 30, 2003 with a Notice to Appear for overstaying his visa. On September 25, 2003, at his first court hearing on the removal charges, Hashmi admitted the allegations and conceded both charges;[1] he also notified the court of the pending I–130 petition and his intention to seek adjustment of status. Since that initial hearing, Hashmi has been mired in a bureaucratic morass caused by the government's failure to ensure that necessary information about his case has been available to both those adjudicating his removal proceedings and those adjudicating his I–130 petition, which are taking place on parallel tracks within the Department of Homeland Security ("DHS").

On November 25, 2003, Hashmi and his wife appeared for a hearing before Citizen and Immigration Services ("CIS") in Cherry Hill, New Jersey, regarding the I–130 petition. In light of the CIS hearing and the pending I–130 petition, the IJ granted Hashmi three additional adjournments of his removal proceedings over a period of approximately 18 months. At a May 24, 2004 hearing, the government represented that CIS believed that one of the documents provided by Hashmi in connection with the I–130 petition had been "altered," and that the document had been "sent out for authentication." (App.65–66.) At an August 26, 2004 hearing, the government clarified that a "questionable document was sent overseas" for investigation, and that CIS had not made a final ruling as to its authenticity. (App.75.) It has since become apparent that the document at issue is the decree that allegedly demonstrates that Hashmi's prior marriage in Pakistan ended in divorce.

In a letter sent to the IJ a few days prior to a March 29, 2005 hearing, Hashmi's attorney explained that Hashmi was stuck in a " '[C]atch[-]22.' " (App.85.) Not only had the divorce decree not yet been authenticated, but a portion of Hashmi's file—the "A" file [2]—had been sent by the CIS office in Cherry Hill, New Jersey, to the government attorney who was handling Hashmi's removal proceedings in Newark, New Jersey. The CIS office informed Hashmi's attorney that it could not proceed without the "A" file, but that the

---

**1.** The Notice to Appear also charged Hashmi with failing to appear for special registration on or before March 21, 2003, as mandated by order of the Attorney General.

**2.** The record does not make clear exactly what information is contained within the "A" file, but CIS represented that Hashmi's I–130 petition could not be adjudicated without it.

government attorney who had the file in his possession did not want to return it until removal proceedings were complete. Hashmi's counsel thus requested an adjournment so that the "A" file could be returned to Cherry Hill.

At the hearing before the IJ on March 29, 2005, Hashmi's attorney reiterated to the IJ that the divorce decree had not been authenticated and that CIS did not have the "A" file; as a result, Hashmi's I-130 petition had still not been adjudicated. Hashmi's attorney then requested a six-month adjournment, which the government did not oppose. The IJ, however, chose to deny the continuance, and delivered an oral decision finding Hashmi removable to Pakistan because, as Hashmi admitted during his initial plea, he had overstayed his visa and failed to appear for special registration. The IJ stated that it was his obligation to complete cases "within a reasonable period of time." (App.46.) Referencing the DOJ's case-completion goals, which are not mandatory but serve as a guideline to assist IJs in managing their calendars, the IJ noted that the case-completion goal for this case type was about 8 months, and that—due to the multiple adjournments—the case had already been pending for a year and a half. The IJ further observed that Hashmi could cite to no law stating that an immigration judge must indefinitely postpone removal proceedings for a pending I-130 petition.

The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision. It stated that an IJ's discretionary denial of a continuance would not be overturned absent a showing of actual preju-

dice or a showing that the outcome of the proceedings would be "materially affected." (App.2.) It also asserted that

> although [Hashmi] faults the Department of Homeland Security (DHS) for the delay in adjudicating the I-130 petition, the transcript reflects that adjudication was delayed because there were issues raised regarding an undisclosed prior marriage and the authenticity of respondent's divorce decree, which document the DHS has sent overseas, and has been awaiting, for verification.

(App.2.)

Hashmi filed a timely petition for review.[3] We have jurisdiction pursuant to 8 U.S.C. § 1252.

## II.

■ Where, as here, the BIA adopts and affirms the decision of the IJ, as well as provides its own reasoning for its decision, the Court reviews both the decisions of the IJ and the BIA. *See He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). An IJ may "grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. This Court has jurisdiction to review an IJ's decision to deny a continuance, and does so for abuse of discretion. *See Khan v. Att'y Gen.*, 448 F.3d 226, 233 (3d Cir.2006); *Ponce–Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir.2003). An IJ's decision should be reversed as an abuse of discretion only if it is arbitrary, irrational or contrary to law. *See Tipu v. INS*, 20 F.3d 580, 582 (3d Cir.1994). In *Ponce–Leiva*, this Court further explained that " '[t]he question whether denial of a

---

**3.** The government represented that CIS had indicated via letter, received December 7, 2007, that it would conduct a "final interview" about the petition "within 60 to 90 days," and that a decision would "follow after." *See* Letter from Allen Hausman, senior Litigation Counsel, Office of Immigration Litigation, to the Court (December 13, 2007). Furthermore, when this Court asked about the status of Hashmi's I-130 petition at oral argument, the government confirmed that CIS had not yet ruled on the petition. To our knowledge, CIS has still not ruled on the petition.

continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case.'" 331 F.3d at 377 (quoting *Baires v. INS*, 856 F.2d 89, 91 (9th Cir.1988)).

## III.

█ We turn first to the decision rendered by the IJ, and we conclude that the IJ abused his discretion when he denied Hashmi's motion for a continuance based solely on concerns about the amount of time required to resolve Hashmi's case.

Hashmi's principal argument is that this case is distinguishable from *Khan* a recent case addressing a similar set of circumstances.[4] In *Khan*, petitioner's wife had applied for a Labor Certification ("Certification") pursuant to 8 U.S.C. § 1255(i). 448 F.3d at 229. If the application were granted, petitioner's wife would be designated a legal permanent resident alien, and petitioner (as her spouse) would be eligible to apply for adjustment of status. *See id.* At petitioner's removal hearing, petitioner conceded removability and requested a continuance pending the outcome of the Certification application; petitioner's counsel advised the IJ that it usually took about 45 days to get a ruling on a Certification. See *id.* The IJ observed that because the Certification was merely pending, and petitioner was not yet eligible to file a visa petition, petitioner was not *prima facie* eligible to adjust his status. *See id.* As a result, the IJ denied the continuance, ruling that

it would be inappropriate to grant an adjournment of these proceedings given the lack of *prima facie* eligibility. *See id.*

We denied the petition, ruling that the IJ's decision to deny the continuance was not an abuse of discretion. We noted that "any continuance would be indefinite" and that the petitioner offered "only the speculative possibility that at some point in the future" his wife could receive a Certification. *Id.* at 235 (citation and internal quotation marks omitted). We also approved of the IJ's observation that, because the Certification was pending, the petitioner had not yet submitted the visa petition, which was ultimately the document that would allow petitioner to adjust his status. *See id.*

We agree with Hashmi's contention that this case is distinguishable from *Khan*. Hashmi is not *potentially* eligible to apply for a status adjustment. It appears that he is eligible. He has already filed his I-130 petition, and is in the process of having the petition adjudicated. In addition, our concern in *Khan* that any grant of a continuance would be "indefinite" is not implicated here. *Id.* at 235. It is evident from the record that CIS had not proceeded with the adjudication of Hashmi's I-130 petition because it was missing Hashmi's "A" file, which was being held by a different branch of DHS responsible for overseeing Hashmi's removal proceeding. Hashmi's attorney had communicated with both CIS and the government attorney responsible for the removal proceedings, and had convinced the latter to return the "A" file to CIS so that the adjudication process could continue. Presumably, if the IJ had granted the continuance agreed to

---

**4.** Hashmi further argues that the IJ abused his discretion by violating the BIA's holding in *Matter of Velarde–Pacheco*, 23 I & N Dec. 253 (BIA 2002). We agree with the government that Hashmi's reliance on *Velarde–Pacheco* is misplaced, as that case involved a

motion to reopen rather than a motion for a continuance, and held only that an alien's motion to reopen based on an I–130 petition filed after the original removal order was issued should be granted if an alien can demonstrate, *inter alia*, a bona fide marriage.

by the parties, consistent with his representation to Hashmi's counsel, the government attorney would have sent the "A" file back to CIS, and the adjudication of the petition would have resumed.

Moreover, as this Court noted in *Khan*, the BIA has determined that it "clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance ... upon his determination that the visa petition is frivolous or that the Adjustment Application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition." 448 F.3d at 234 n. 7 (quoting *Matter of Garcia*, 16 I & N Dec. 653, 656–57 (BIA 1978), *modified on other grounds by In re Arthur*, 20 I & N Dec. 475 (BIA 1992)). Neither of those circumstances applies here: the IJ did not make a determination that the I–130 petition was frivolous, nor did he determine that it was likely to be denied. Instead, the *sole* basis for the IJ's exercise of discretion was the IJ's perceived "obligation[ ]" to "manage [his] calendar[ ]" and "complete cases within a reasonable period of time." (App.46.) The IJ determined what constituted a "reasonable period" by looking to the "case-completion goals" set forth by the Department of Justice. *Id.* Consequently, although the IJ noted it was "regrettabl[e]" that the I–130 petition had not been adjudicated, he concluded that Hashmi's case should be closed because it fell into a category of cases with a case-completion goal of eight months, and had been pending for a much longer period of time. *Id.* at 45.

This one-size-fits-all approach runs contrary to our statement in *Ponce–Leiva* that what "constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis *according to the facts and circumstances of each case.*" 331 F.3d at 377 (citation omitted) (emphasis added). Case-completion goals are ordinarily implemented as guidelines to promote reasonable uniformity and to help judges schedule and effectively manage their caseloads. As guidelines, they should not be read as an end in themselves but as a means to prompt and fair dispositions, giving due regard to the unique facts and circumstances of the case.

Here, the IJ clearly failed to take into account the specific facts and circumstances of Hashmi's case. Instead, the IJ treated Hashmi's case as if it were interchangeable with any other case within the same case-completion goal category. To reach a decision about whether to grant or deny a motion for a continuance based solely on case-completion goals, with no regard for the circumstances of the case itself, is impermissibly arbitrary. *See, e.g., Tipu*, 20 F.3d at 583–4. For this reason, we conclude that the IJ's decision to deny the continuance was an abuse of discretion.

We further note that Hashmi's counsel aptly characterized Hashmi's situation as a "Catch–22." It is absurd indeed that Hashmi should be ordered removed because the file needed for one DHS office to adjudicate his I–130 petition was being held by a different DHS office, which succeeded in removing Hashmi because the first DHS office had failed to adjudicate the petition.[5] A ruling in favor of the

---

5. We disagree with the position taken by the government at oral argument that it was Hashmi's responsibility to compel CIS to adjudicate his I–130 petition, and that he should have taken additional steps to ensure that the petition was adjudicated prior to the March

29, 2005 removal hearing. The record clearly indicates that Hashmi filed his I–130 petition in a timely fashion; appeared as scheduled at the CIS hearing regarding the petition; pursued with CIS the issue of the missing "A" file; and communicated to the IJ that an

government here would leave DHS with no incentive to fix its procedures to avoid such a situation in the future and would allow the deportation of similarly-situated individuals, who may well be entitled to an adjustment of status, simply because the period mandated by the case-completion goals has expired. And the consequences of removal are not small. If Hashmi is removed, it will be on an involuntary basis, and he will have to wait ten years to return to the United States, even if his I130 petition is granted in the interim. *See* INA § 212(a)(9)(B)(i)(II).

## IV.

■ We also review the BIA's decision, as it appears to provide an additional basis for Hashmi's removal. The BIA's decision contains language which suggests that the denial of the continuance was not an abuse of discretion because some fault for the delay in adjudicating the I–130 petition lay with Hashmi:

> Moreover, although the respondent faults the Department of Homeland Security (DHS) for the delay in adjudicating the I–130 petition, the transcript reflects that adjudication was delayed because there were issues raised regarding an undisclosed prior marriage and the authenticity of the respondent's divorce decree, which document the DHS has sent overseas, and has been awaiting, for verification.

(App.2.) However, the IJ made no finding that the I–130 petition was delayed due to Hashmi's actions, nor did the IJ base his

decision to deport Hashmi on such a finding. In fact, the IJ's decision never addressed the reason why CIS had failed to adjudicate Hashmi's I–130 petition.

The BIA is prohibited from making findings of fact. *See* 8 C.F.R. § 1003.1(d)(3)(iv) ("the Board will not engage in factfinding in the course of deciding appeals"); *see also Nabulwala v. Gonzales,* 481 F.3d 1115, 1118 (8th Cir.2007); *Chen v. Bureau of Citizenship and Immigration Servs.,* 470 F.3d 509, 513–14 (2d Cir.2006). Therefore, to the extent that the BIA's decision rests in the alternative on its own finding of fact that the IJ did not abuse his discretion by denying the continuance because Hashmi's own actions regarding the I–130 petition contributed to the delay, it erred.[6]

Because we have determined that the IJ's decision to deny the continuance constituted an abuse of discretion, we need not reach Hashmi's other arguments.

## V.

For the reasons discussed above, we will grant the petition, vacate the BIA's decision and remand for further proceedings consistent with this opinion.

---

adjournment would permit the "A" file to be returned to CIS so that the adjudication could proceed. We do not believe that Hashmi could have pursued the matter in a more diligent fashion.

**6.** We note that counsel for the government not only improperly adopted the BIA's statement that there were questions as to "the authenticity of the respondent's divorce de-

cree" as a legitimate factual finding, *see* Appellee's Br. at 18, but strayed even further from the record at oral argument, characterizing the divorce decree as "fraudulent." There is no support for this assertion; the record reflects only that CIS believed the document had been altered and was investigating its authenticity.